IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA



UNITED STATES OF AMERICA

V.     CASE NO.: 1:11-cr-00092-01

RAYMOND C. DAWSON,
    *Defendant*

## DEFENDANT'S SENTENCING MEMORANDUM

Now comes Defendant, by counsel, and submits for this Court's consideration his memorandum concerning sentencing in this matter.

On May 5, 2011, Defendant pled guilty by information to the single count of making a false representation to a Mine Safety and Health Act (MSHA) investigator, in violation of 18 U.S.C. sec. 1001(a)(2).

Pursuant to the Presentence Investigation Report (PSI), prepared in this matter by Senior United States Probation Officer J. Alexander Alvarez, Defendant's Total Offense Level has been computed to be 12, and his Criminal History Category is II.

### *The 'Endangerment Enhancement'.*

Under Paragraph 20 of the PSI report, *Specific Offense Characteristic,* the offense level is recommended to be increased from 6 to 14, per U.S.S.G. sec. 2B1.1(b)(13)(A).

U.S.S.G. sec. 2B1.1(b)(13)(A) states, "If the offense involved ... the conscious or

-2-

reckless risk of death or serious bodily injury ... [the offense level is] increase[d] by **2** levels. If the offense level is less than **14**, increase to level **14**."

Defendant states that this section should not apply here. His conviction is not for the false certification of a mine safety training certificate. Such is a different offense, which might well cause U.S.S.G. sec. 2B1.1(b)(13)(A) to apply, because improperly trained miners returning to the job would pose a safety risk.

Here, however, Defendant was untruthful with the investigator on the issue of whether the miners had been trained for the proper number of hours.

The PSI report states, in Paragraph 20, that "the defendant's failure to provide truthful information to the MSHA special investigators increased the risk that the lack of training would not be discovered and corrective action would not be taken."

Defendant takes issue with this conclusion. The investigators were already aware, through the miners' statements, of the insufficient training sessions. The lack of complete training hours had already been discovered, and would presumably been prosecuted with or without Defendant's statement. Had Defendant had remained silent, he almost surely would have been prosecuted just the same.

Defendant's false statement simply did not "involve[ ] ... the conscious or reckless risk of death or serious bodily injury". The false certification may have caused such a risk; the false statement did not.

### *Defendant's Alternative Request for a Variance.*

Should the Court accept the PSI report's recommendation of enhancement to offense level

14, Defendant alternatively argues for a variance in his position in the sentencing table.

The PSI report places Defendant at Zone C, Offense Level 12, and Criminal History Category II, or a sentence of twelve to eighteen months imprisonment. Defendant notes that he is at the low end of Criminal History II, with 2 Criminal History Points, rather than 3.

Defendant asks for a variance down to Zone B. This would make him probation eligible.

In support of Defendant's request, the following is stated.

Defendant is fifty-eight years old, and is married to Shelby Dawson.

Defendant is in poor health. Since the preparation of the original PSI report, he has been flown to a hospital in Bristol, Tennessee, experiencing cardiologic symptoms. He has been diagnosed with a 30% non-functioning heart. He now wears a "Life Vest", with a defibrillator attached.

Mr. Dawson has been informed by his physician that he is subject to a heart attack at any time, and that such event would be fatal, given the compromised condition of his heart. He will undergo surgery in a month or so for the implanting of a permanent defibrillator.

He has excessive fluid around the heart and the ankles, indicative of congestive heart failure.

Mr. Dawson suffers from high blood pressure. He has diabetes. He has three bulged disc in his back.

Mr. Dawson suffers from arthritis in the hands, feet, and back, the last possibly being related to the fact that he suffered a broken back a number of years ago. He takes a number of medications daily.

-4-

Defendant also notes that, while he does not dispute the criminal history points computation, he does note what may be the mitigating circumstances surrounding that offense. The PSI report does include a version of the facts of that case. Basically, Defendant, at the time of that offense, had become fearful for his son's safety, in that the younger Mr. Dawson had overdosed on drugs. An argument ensued with his son's girlfriend when Defendant went to his son's home to assist his son. Defendant believed that his son's girlfriend was complicit in his son's drug abuse and overdose. It is noted that Defendant's son did indeed die from a drug overdose five months later.

### *Summation.*

Defendant asks that the Court consider a downward variance to Offense Level Zone B, enabling probation eligibility.

Defendant also asks the Court to consider a split sentence of imprisonment and home confinement, in the event that probation is not granted.

Defendant also asks the Court to consider a departure downward from the sentencing guidelines, and to consider the possibility of a sentence without jail, even without a downward variance to Offense Level Zone B.

-5-

Respectfully submitted,

*/s/ Steve Mancini*

Steve Mancini
Counsel for Defendant
WV State Bar ID#: 5921
P.O. Box 5514
Beckley, WV 25801
(304) 256-8388

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has served, by fax, sent today, Aug. 18, 2011, a true and accurate copy of the foregoing *Defendant's Sentencing Memorandum* upon the following:

Philip Wright, Esq.
United States Atty.'s Office
P.O. Box 1713
Charleston, WV 25326
Fax: 304-347-5108

J. Alexander Alvarez
Senior U. S. Probation Officer
601 Federal St., Rm. 3302
Bluefield, WV 24701
Fax: 304-325-5196

_____
Steven K. Mancini
*Counsel for Defendant*
State Bar ID#: 5921
P.O. Box 5514
Beckley, WV 25801
(304) 256-8388